IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARYL T. HAYDEN, | ) |
|     Petitioner, | ) Civil Action No. 2:22-cv-654 |
| v. | ) |
| | ) Magistrate Judge Patricia L. Dodge |
| SUPERINTENDENT D. OBERLANDER, | ) |
| (*S.C.I. Forest Warden*), *et al.*, | ) |
|     Respondents. | ) |

## MEMORANDUM

Pending before the Court[1] is a Petition for a Writ of Habeas Corpus (ECF No. 1) filed by Daryl T. Hayden ("Petitioner") under 28 U.S.C. § 2254. Petitioner challenges the judgment of sentence imposed on him by the Court of Common Pleas of Allegheny County on September 6, 2018, at criminal docket numbers CP-02-CR-8105-2017 and CP-02-CR-8106-2017. For the reasons set forth below, the Court will deny the petition and will deny a certificate of appealability.

**I.      Relevant Background**

Petitioner was convicted at a jury trial of one count of rape, three counts of involuntary deviate sexual intercourse by forcible compulsion ("IDSI"), one count of attempted IDSI, and two counts each of sexual assault-serious bodily injury, indecent assault-forcible compulsion, aggravated assault, strangulation in connection with sexual violence, terroristic threats, and possession of an instrument of crime. The Superior Court of Pennsylvania summarized the facts adduced at trial as follows:

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of a final judgment.

1

Hayden's convictions arise from two separate incidents that occurred in June of 2017.[footnote 11] The trial court set forth the relevant facts, in part, as follows:

> In the early morning hours on June 10, 2017, victim M.D. encountered [Hayden] while walking on Frankstown Avenue in the area of Homewood. The two had never met before and engaged in a conversation wherein [Hayden] agreed to give [M.D.] crack cocaine in exchange for sex. [Hayden] initially suggested [they go to] his Mother's house, or someone by the name of "Mama Jean[,]" as they walked in search of a location. They eventually settled on the football field located behind Westinghouse High School. [M.D.]'s testimony was uncontradicted by [Hayden] up to this point.
>
> [M.D.] testified that once at the football field[, Hayden] offered her a piece of crack; she tasted it by putting it to her tongue and determined that it was fake. She rejected the crack and began walking away when [Hayden] grabbed her from behind by placing his arm around her throat, choking her, while simultaneously bringing her to her knees. [Hayden] positioned himself on top of [M.D.] and repeatedly punched her [in] the head upwards of fifteen (15) to twenty (20) times. M.D. recalled her nose hurt and that she was choking on blood when [Hayden] displayed a box cutter, threatening to kill her with it. She testified that she was in fear for her life and grabbed for what she thought was a stick and began swinging it at [Hayden]. He continued to strangle her, and with the box cutter in hand, ordered [M.D.] to strip naked. She complied and[,] at his direction, stood up and walked over to the corner of the building where he forced her to perform oral sex. [Hayden] then removed his penis from her mouth, retrieved a condom from her purse[,] and ordered her to put the condom on him using her mouth. He then forced her to perform oral sex a second time. M.D. testified that she was then made to stand up, bend over, and was raped anally by [Hayden]. M.D. did not consent to any of the sexual acts. [Hayden] told her to get dressed and while in considerable pain, she managed to put on some clothes, grab her belongings[,] and walk to a nearby house for help.[footnote 12] That homeowner called police and M.D. was transported to a nearby hospital by ambulance where she was treated for five (5) days for a blood clot on her brain, concussion, broken nose, and bruising to the right side of her face and eyes, which were swollen shut.
>
> Alternatively, [Hayden] testified to the events at the football field as consensual sex. He disputed [M.D.]'s testimony that she rejected the crack because it [] was fake, informing the jury that M.D. in fact smoked the drugs with her own crack pipe. [Hayden] continued to counter M.D.'s testimony by contending that she removed her own clothes and willingly participated in sex. He explained to the jury that it was only after [M.D.] asked for money, despite their "agreement," that he protected himself by slapping her several times in the face with an open hand.

2

An eerily similar set [of] events played out eleven (11) days later during the early morning hours on June 21, 2017, when a second victim, L.H., encountered [Hayden] on Frankstown Avenue in Homewood.[footnote 13] L.H. testified that she was six (6) months pregnant and was walking to a friend's house when [Hayden], who she had never met before, approached her asking for a cigarette. She described to the jury that while walking, [Hayden] asked her if she wanted to go to his house, only to tell L.H. a short time later that they couldn't because [another woman] was home. When asked why she was with [Hayden], L.H. explained that [Hayden] wanted to talk, but she could not recall what they discussed. They eventually reached the top steps that lead down to the football field behind Westinghouse High School. It is at this time that [Hayden] asked [L.H.] where they were going to have sex. L.H. refused, telling the jury that she was six (6) months pregnant and that having sex was "not the plan." L.H. described how [Hayden] then put his arm around her neck and dragged her backwards down the steps onto the field. While choking her, [Hayden] removed her head scarf, one shoe, and pant leg and made [L.H.] retrieve a condom from her purse. [Hayden] put the condom on himself and attempted vaginal sex. L.H. resisted, broke free[,] and ran, screaming and crying for help[footnote 14] away from the dark field and toward the steps, which were lit. [Hayden], for the second time, grabbed [L.H.] around her throat and dragged her down the steps back onto the unlit field. While continuing to drag her, he pulled out a box cutter and threatened to stab her if she kept screaming. In an effort to get her to stop screaming, [L.H.] testified that [Hayden] would choke her to the point where she couldn't breathe, or hit her. After he dragged her deeper into the football field, he removed her other shoe and her pants completely. [Hayden] attempted to anally rape her, telling [L.H.] she was "going to give it to me from the back." Although he did not penetrate her anally, sometime during the struggle [Hayden] did penetrate her vaginally. L.H. did not consent to any sexual acts, including forced oral sex that she described while on cross examination. The assault ended when [Hayden] ran off after seeing flashlights at the top of the steps, which [turned out] to be the police responding to a 911 call for a woman screaming.[footnote 15]

[Hayden] offered the jury a different version regarding his interaction with L.H. He testified that he encountered [L.H.] on Frankstown Avenue and asked her for a cigarette after which the two talked about getting high. [Hayden] could see that she was pregnant, remembering that he jokingly asked [L.H.] if she "swallowed a basketball." All the while, he contends, [L.H.] denied she was pregnant. [Hayden] testified that L.H. purchased crack with money [he] had given her and that she offered to do "something" for it, meaning exchange sex for drugs. He stated that they went to Westinghouse High School at his suggestion after the house he was considering going to with L.H. did not pan out. Contrary to L.H.'s testimony, [Hayden] told the jury that she walked willingly down to the field[] and appeared to smoke the crack he gave her, yet in apparent conflict with his own testimony, maintained

3

that she ran off after he handed her the drugs. According to [Hayden], despite running off, L.H. freely came back to the field after he complained about her leaving without him getting his half of the bargain, later adding that he grabbed her by the arm. He testified that after [L.H.] rejoined him on the football field[,] they engaged in consensual sex, denying any type of physical assault. He explained that after hearing two (2) car doors close and seeing flashlights, he assumed the police were at the field and ran off because he had crack cocaine on his person.

Trial Court Opinion, 1/2/19, at 3-7.

[footnote 11] Hayden was charged at CC Nos. 201708105 and 201708106 in connection with his assaults against M.D. and L.H., respectively. The cases were consolidated for trial before the Honorable Mark Tranquilli. See N.T. Trial, 6/6/18, Vols. 1 and 2.

[footnote 12] The homeowner, Jenee Johnson, testified that she encountered M.D. banging on her front door early that morning, bleeding from her face, nose, and mouth, repeatedly stating that she had been beaten up and raped. N.T. Trial, 6/6/18, Vol. 1 at 147-49.

[footnote 13] Neither M.D. nor L.H. knew each other when the assaults occurred. N.T. Trial, 6/6/18, Vol. 1 at 131; N.T. Trial, 6/6/18, Vol. 2 at 58.

[footnote 14] Darren Holmes, who lived close to Westinghouse High School, testified that he heard a woman yelling for help during the early hours of June 21; at first, he ignored it, but called 911 after the screaming continued and he heard "the fear in her voice." N.T. Trial, 6/6/18, Vol. 2 at 61-62.

[footnote 15] L.H. was treated at a nearby hospital for injuries, which included a facial contusion, scratches on her neck, and bruising to her face and arms. N.T. Trial, 6/6/18, Vol. 1 at 27-31, 67.

(ECF No. 9-30 at 2-6) .

Petitioner was sentenced to an aggregate term of 77½ to 155 years' imprisonment.

Petitioner filed a direct appeal, but the Superior Court of Pennsylvania affirmed his judgment of sentence on May 8, 2020. *Commonwealth v. Hayden*, 237 A.3d 438 (Pa. Super. 2020) (unpublished memorandum) (ECF No. 9-30) The Supreme Court of Pennsylvania denied his petition for allowance of appeal on September 23, 2020. *Commonwealth v. Hayden*, 239 A.3d 1085 (Pa. 2020).

On March 1, 2021, Petitioner filed a petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. The trial court denied that petition on September 22, 2021.

This petition for writ of habeas corpus was timely filed on April 27, 2022. Petitioner raises four grounds for relief: (1) ineffective assistance of trial counsel at trial and on appeal; (2) his convictions were against the weight of the evidence; (3) the trial court abused its discretion in imposing sentence; and (4) the trial court abused its discretion in denying a motion to suppress.

Respondents filed an answer (ECF No. 9), in which they argue that Petitioner's claims are unexhausted, defaulted, not cognizable, and/or without merit. Petitioner filed a reply. (ECF No. 22.) The petition is ripe for consideration.

## II.   Discussion

### A.   Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 2254, the federal habeas statute applicable to prisoners in custody pursuant to a state court judgment. This statute permits a federal court to grant a state prisoner a writ of habeas corpus "on the ground that he or she is in custody in violation of the Constitution…of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *Id.*; *see, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is Petitioner's burden to prove that he is entitled to the writ. *See, e.g.*, *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017).

### B.   Standard of Review

In 1996, Congress made important amendments to the federal habeas statutes with the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Among other things, AEDPA "modified a federal habeas court's role in reviewing state prisoner

5

applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 403-04 (2000)). It reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (internal quotations and citation omitted).

A finding of fact made by a state court has always been afforded considerable deference in a federal habeas proceeding. AEDPA continued that deference and mandates that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

AEDPA also put into place a new standard of review, which is codified at 28 U.S.C. § 2254(d). In this Court, it applies "to any claim that was adjudicated on the merits" by the Superior Court of Pennsylvania and prohibits a federal habeas court from granting relief unless the petitioner established that the Superior Court's "adjudication of the claim":

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). For the purposes of § 2254(d), a claim has been "adjudicated on the merits in State court proceedings" when the state court (here, the Superior Court) made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground. *See, e.g.*, *Richter*, 562 U.S. at 98-100; *Robinson v. Beard*, 762 F.3d 316, 324 (3d Cir. 2014).

6

Subsection § 2254(d)(1) applies to questions of law and mixed questions of law and fact. A state-court adjudication is "contrary to…clearly established Federal law, as determined by the Supreme Court of the United States" § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," *Williams*, 529 U.S. at 405, or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent," *id.* at 406. A "run-of-the-mill" state-court adjudication applying the correct legal rule from Supreme Court decisions to the facts of a particular case will not be "contrary to" Supreme Court precedent. *Williams*, 529 U.S. at 406. Thus, the issue in most federal habeas cases is whether the adjudication by the state court survives review under § 2254(d)(1)'s "unreasonable application" clause.

"A state court decision is an 'unreasonable application of federal law' if the state court 'identifies the correct governing legal principle,' but 'unreasonably applies that principle to the facts of the prisoner's case.'" *Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 281 (3d Cir. 2016) (en banc) (quoting *Williams*, 529 U.S. at 413). To satisfy his burden under this provision of AEDPA's standard of review, Petitioner must do more than convince this Court that the Superior Court's decision was incorrect. *Id.* He must show that it "'was *objectively* unreasonable.'" *Id.* (quoting *Williams*, 529 U.S. at 409) (emphasis added by Court of Appeals). This means that Petitioner must prove that the Superior Court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. As the Supreme Court noted:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *See Lockyer, supra*, at 75, 123 S. Ct. 1166. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's

7

>"modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

*Id.* at 102.

The standard of review set forth at § 2254(d)(2) applies when a petitioner "challenges the factual basis for" the state court's "decision rejecting a claim[.]" *Burt v. Titlow*, 571 U.S. 12, 18 (2013).[2] "[A] state court decision is based on an 'unreasonable determination of the facts' if the state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state-court proceeding,' which requires review of whether there was sufficient evidence to support the state court's factual findings." *Dennis*, 834 F.3d at 281 (quoting § 2254(d)(2) and citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Titlow*, 571 U.S. at 18 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)); *see Rice v. Collins*, 546 U.S. 333, 342 (2006) (reversing court of appeals' decision because "[t]he panel majority's attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AEDPA's requirements for granting a writ of habeas corpus."). Thus, "if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede'" the state court's adjudication. *Wood*, 558 U.S at 301 (quoting *Collins*, 546 U.S. at 341-42).

---

[2] Sections 2254(d)(2) and (e)(1) "express the same fundamental principle of deference to state court findings[,]" and federal habeas courts "have tended to lump the two provisions together as generally indicative of the deference AEDPA requires of state court factual determinations." *Lambert*, 387 F.3d at 235. The Court of Appeals has instructed that when it applies, § 2254(d)(2) provides the "overarching standard" that a petitioner must overcome to receive habeas relief, while 2254(e)(1) applies to "specific factual determinations that were made by the state court, and that are subsidiary to the ultimate decision." *Id.*

8

C.  Exhaustion and Procedural Default

The "exhaustion doctrine" requires that a state prisoner raise his federal constitutional claims in state court through the proper procedures before he litigates them in a federal habeas petition. *See, e.g.*, *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). It is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). It is "designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts[.]" *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Additionally, and importantly, a petitioner must have "invoke[d] one complete round of the State's established appellate review process[,]" in order to satisfy the exhaustion requirement. *O'Sullivan*, 526 U.S. at 845. In Pennsylvania, this requirement means that a petitioner in a non-capital case such as this one must have first presented every federal constitutional claim raised in his federal habeas petition to the Superior Court. *See, e.g.*, *Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).

The doctrine of procedural default, like the doctrine of exhaustion, is "grounded in concerns of comity and federalism," *Coleman*, 501 U.S. at 730. To summarize, it provides that a Pennsylvania state prisoner in a non-capital case defaults a federal habeas claim if he: (a) failed to present it to the Superior Court and he cannot do so now because the state courts would decline to address the claims on the merits because state procedural rules (such as, for example, the PCRA's one-year statute of limitations) bar such consideration; or (b) failed to comply with a state procedural rule when he presented the claim to the state court, and for that reason the Superior Court declined to address the federal claim on the merits. *See, e.g.*, *Edwards v. Carpenter*, 529

9

U.S. 446, 451 (2000); *O'Sullivan*, 526 U.S. at 851-56 (Stevens, J. dissenting) (describing the history of the procedural default doctrine); *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Lines v. Larkins*, 208 F.3d 153, 162-69 (3d Cir. 2000).

A petitioner may avoid the default of a claim by showing "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]"*Coleman*, 501 U.S. at 750. "'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[.]" *Id.* at 753 (emphasis in original).

A petitioner may also overcome his default by demonstrating "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. This means that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Schlup v. Delo*, 513 U.S. 298, 316 (1995). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Id.* at 324. In only the extraordinary case will a petitioner be able to establish a "fundamental miscarriage of justice."

    D.    <u>Petitioner's Claims</u>

        1.    <u>Ground One: Ineffective assistance of counsel</u>

Petitioner first claims that he received ineffective assistance of counsel. Specifically, he claims:

> My lawyer failed to object during trial to preserve issues for appeal. My lawyer kept falling asleep during trial. Trial counsel has since been convicted of criminal activity. Counsel was ineffective on appeal and refused to consider adding this issue to any level of appeal.

(ECF No. 1 at 5).

Respondents argue that these claims are unexhausted, procedurally defaulted, and without merit. (ECF No. 9 at 24-29.) In his reply, Petitioner concedes that these claims are unexhausted and defaulted, but asserts that a fundamental miscarriage of justice has occurred. (ECF No. 22 at 4.)

The fundamental miscarriage of justice to which he refers is the violation of his right to effective counsel. He asserts, with no more specificity than he offers in his petition, "my lawy[e]r failed to object at key intervals of trial, he failed to appeal rulings that were clearly prej[u]dicial to me." (*Id.*) The miscarriage of justice basis for overcoming default is synonymous with a credible showing of actual innocence. *See McQuiggin v. Perkins*, 569 U.S. 383 (2013). Petitioner's bald assertions, which do not concern his innocence, are of neither the type nor quality that would establish that this is the extraordinary case in which it would be fundamental miscarriage of justice not to resolve the defaulted claims.

To the extent that Petitioner also attempts to invoke the "cause and prejudice" exception to the procedural default doctrine by faulting PCRA counsel for not raising trial counsel's ineffectiveness,[3] this attempt fails.

The general rule is that, because there is no federal constitutional right to counsel in a PCRA proceeding, a petitioner cannot rely on PCRA counsel's ineffectiveness to establish the "cause" necessary to overcome the default of a federal habeas claim. *Coleman*, 501 U.S. at 753; *Davila v. Davis*, 582 U.S. 521 (2017). In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court announced a narrow exception to this rule. In relevant part, it held that in states like Pennsylvania,

---

[3] *See*, *e.g.*, ECF No. 1 at 5 ("My lawyer would not add this issue to any level of proceedings. I never had a lawyer who would challenge the trial counsel's ineffectiveness.").

11

where the law requires that claims of ineffective assistance of trial counsel be raised for the first time in a collateral proceeding, a petitioner may overcome the default of a claim of trial counsel's ineffectiveness if the petitioner demonstrates: (1) the defaulted claim of trial counsel's ineffectiveness is "substantial" and (2) PCRA counsel was ineffective for (3) failing to raise that claim in the "initial review collateral proceeding." *Martinez*, 566 U.S. at 17.

Petitioner's appointed PCRA counsel included this issue in his "no merit" letter to the PCRA court in which he sought permission to withdraw as counsel. Counsel explained that he had discussed this issue with Petitioner and analyzed it as follows:

> Ineffective Assistance of Counsel: Petitioner claims his trial attorney, Paul Gettleman, Esq., did not fight for him and fell asleep during trial. The Supreme Court of Pennsylvania sets forth the standard for ineffective assistance of counsel claims, as follows:
>
>> A PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truthdetermining process that no reliable adjudication of guilt or innocence could have taken place. Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him ... Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. If a petitioner fails to prove any of these prongs, his claim fails. Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. Where matters of strategy and tactics are concerned, finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.
>
> *Com. v. Spotz*, 84 A.3d 294, 311-12 (Pa. 2014)(internal citations and quotation marks omitted). Petitioner is unable to articulate a claim of ineffective assistance of counsel under the above standard. Upon review of the record, I do not find any

> indication that counsel acted unreasonably, or that Petitioner suffered any prejudice as a result of counsel's actions.[footnote 4]
>
> [footnote 4] Petitioner stated on the record during sentencing that Attorney Gettleman was sleeping during trial. N.T., 9/6/18. At 32. Judge Tranquilli responded: "I sat up here and watched the whole trial closely. I took careful notes. Mr. Gettleman picked his battles in this case. All right? He was not asleep at any time. All right?" *Id.*

(ECF No. 9-35 at 10-11.)

Because Petitioner's PCRA counsel discussed this claim in his no-merit letter to the PCRA court and the PCRA court evaluated its merits,[4] the *Martinez* exception is not applicable. *See Mitchell v. Gilmore*, 2023 WL 5517214, at *7 (E.D. Pa. Aug. 23, 2023) (explaining that the *Martinez* exception is only available where, otherwise, no court would ever review the ineffectiveness claim and is thus inapplicable where the PCRA court considered the claim on its merits after counsel discussed the claim in a no-merit letter).[5]

Petitioner is not entitled to habeas relief on this ground.

### 2. Ground Two: Weight of the evidence

In this claim, Petitioner challenges the weight of the evidence supporting his convictions, arguing that his exculpatory testimony should have been credited. (ECF No. 1 at 7-8.) Petitioner raised this claim in his direct appeal; the Superior Court of Pennsylvania found it to be without merit. (ECF No. 9-30 at 8-11.)

---

[4] In its order permitting PCRA counsel to withdraw and notifying Petitioner of its intent to dismiss the PCRA petition, the PCRA court stated that it found all of the issues raised by Petitioner to be without merit. (ECF No. 9-37.)

[5] Further, even if *Martinez* did excuse his default, Petitioner's separate failure to develop the record on this issue in state court would prohibit him from showing that his trial counsel was ineffective. *See Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713, 720 (3d Cir. 2022) (explaining that the court "need not dwell" on the issue of whether the petitioner can overcome his default if the petitioner cannot show that his trial counsel was ineffective when considering only the facts developed in state court.)

A claim that the jury's verdict was against the weight of the evidence is purely one of state law that is distinct from a federal due process claim, and, as such, it is not cognizable in federal habeas corpus. *Tibbs v. Florida*, 457 U.S. 31, 37-45 (1982) (a weight of evidence claim raises questions of credibility; it is different from a claim that the evidence was insufficient to support a conviction). In conducting habeas review for a state prisoner such as Petitioner, this Court is limited to deciding whether his state conviction violated the Constitution of the United States, *see* 28 U.S.C. § 2254(a), and may not rule on issues of pure state-law error. *Estelle*, 502 U.S. 62, 67-68 (1991) (federal courts may not "reexamine state court determinations on state-law questions"); *see also Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence[.]"); *see e.g.*, *Anger v. Wenerowicz*, 2012 WL 5208554, at *2 (W.D. Pa. Sept. 10, 2012) (a claim that the verdict was against the weight of the evidence "is simply not a cognizable claim in federal habeas proceedings as it raises solely a state law claim."), report and recommendation adopted by 2012 WL 5208654 (W.D. Pa. Oct. 22, 2012).

As such, the Court may not review Petitioner's challenge to the weight of the evidence because it not a cognizable claim in a habeas corpus proceeding.

    3.    <u>Ground Three: Sentencing</u>

Petitioner next claims that the trial court abused its discretion in imposing the judgment of sentence. (ECF No. 1 at 8-10.) Specifically, he asserts that the court had no "support from the record" when it imposed a consecutive sentence at each count. (*Id.*) Petitioner raised this claim in his direct appeal. The Superior Court found the claim to be waived in part and not cognizable in part. (ECF No. 9-30 at 11-13.)

The errors Petitioner raises are alleged defects in the state court's sentencing procedure and thus constitute state law claims. *See Pringle v. Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir. 1984). As discussed above, errors of state law are not cognizable in a federal habeas proceeding. *Estelle*, 502 U.S. at 67-68.

In his reply, Petitioner baldly asserts that his sentence "raises issues of cruel an[d] unusual punishment" and "is arbitrary and capricious by the standards set[] forth in Richmond V Lewis." (ECF No. 22 at 6.) In *Richmond v. Lewis*, 506 U.S. 40, 50 (1992), the United States Supreme Court explained that the federal constitutional question concerning the imposition of a state sentence is whether the sentencing court acted in a manner "so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation."

To the extent the Court accepts these federal constitutional claims, raised for the first time in Petitioner's reply, they are unexhausted and procedurally defaulted. This Court need not resolve the more complex issue of procedural default, however, if it determines that Petitioner's claim has no merit, even under a *de novo* review. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (where analysis of procedural default is complex, the court may skip the issue and proceed to the merits). That course is ultimately followed here.

Petitioner has alleged nothing to suggest that the sentencing court imposed his sentence in an arbitrary and capricious manner. Further, generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual punishment under the Eighth Amendment. *Martinez v. Stridiron*, 538 Fed. Appx. 184, 191 (3d Cir. 2013) (citing *United States v. Miknevich*, 638 F.3d 178, 186 (3d Cir. 2011)). Petitioner does not allege that the sentence exceeds statutory limits. Accordingly, this ground for relief will be denied.

4. <u>Ground Four: Suppression</u>

In Petitioner's final claim, he asserts that the trial court abused its discretion in denying his pre-trial motion to suppress statements he made to police where police continued to interrogate him after he had made a clear and unambiguous request for counsel. (ECF No. 1 at 10-11.) He raised this claim in his direct appeal where the Superior Court addressed it on its merits. Thus, this claim is analyzed under 28 U.S.C. § 2254(d).[6]

Specifically, the Superior Court held:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous.

***Commonwealth v. Jones***, 988 A.2d 649, 654 (Pa. 2010) (citation omitted).

The law surrounding a defendant's constitutional right to counsel is well-settled: "where an individual states that he wants an attorney, the interrogation must cease until an attorney is present." ***Commonwealth v. Kunkle***, 79 A.3d 1173, 1183 (Pa. Super. 2013). However, if a statement regarding the right to counsel is "ambiguous or equivocal, the police are not required to end the interrogation, nor are they required to ask questions designed to clarify whether the suspect is invoking his *Miranda* rights." ***Commonwealth v. Frein***, 206 A.3d 1049, 1065 (Pa. 2019).

Here, the record fully supports the trial court's denial of Hayden's suppression motion. When police approached Hayden in connection with their investigation, Hayden asked that his DNA be taken at police headquarters because he wanted to talk more about the accusations against him. N.T. Suppression Hearing, 10/23/17,

---

[6] Respondents argue that this claim is not cognizable under *Stone v. Powell*, 428 U.S. 465 (1976). (ECF No. 9 at 33-34.) They are incorrect. In *Stone*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." The holding in *Stone* does not apply to Fifth Amendment *Miranda* claims. *Withrow v. Williams*, 507 U.S. 681, 683 (1993).

16

at 7-13. At the beginning of the interview, when Hayden began speaking, Sergeant Fleske interrupted him and told him that he had to be informed of his *Miranda* rights. Interview Transcript, 7/22/17, at 7-8. After reciting them to Hayden, the following exchange occurred:

> Detective Burst: If you exercise the right not to answer, questioning will stop. Do you understand that?
>
> [Hayden]: Yes.
>
> Detective Burst: Okay. Knowing these rights, are you willing to waive your rights and talk to us without a lawyer?
>
> [Hayden]: **I would rather talk to a lawyer but I really want to know - two women said that I sexually assaulted them?**
>
> Detective Burst: Yeah, and that's what we want to talk about. And at any time you can just say, no, I don't want to answer any further questions.
>
> \* \* \*
>
> Detective Burst: We just want to hear your side of what happened, you know what I mean?
>
> [Hayden]: Oh, okay.
>
> Detective Burst: Are you willing to do that?
>
> [Hayden]: Yeah.
>
> \* \* \*
>
> Sergeant Fleske: Okay. Whenever you want to stop, you say stop and we'll be done.
>
> [Hayden]: Okay.

*Id.* at 10-14 (emphasis added).[footnote 21]

Hayden contends simply that he "indicated that he wished to speak with an attorney," and the detectives ignored his request in violation of his right to counsel. Brief of Appellant, at 27. However, a review of the precise words Hayden used during questioning, as well as the attendant circumstances, fully supports the suppression court's conclusion that his request for counsel was "at best ambiguous and equivocal." Suppression Court's Findings of Fact and Legal Conclusions, 4/9/18, at 32. In ***Davis v. United States***, 512 U.S. 452 (1994), the United States

17

> Supreme Court held that the defendant's statement that, "Maybe I should get a lawyer," during police interrogation did not constitute a clear and unambiguous request for counsel. *Id.* at 462. The Court further concluded that police may "continue questioning until and unless the suspect clearly requests an attorney." *Id.* at 459.
>
> Here, after Hayden volunteered to go to police headquarters to talk about the rape allegations against him, he was *Mirandized* and specifically asked whether he was willing to continue the interview. His statement that he "would rather talk to a lawyer **but really want[s] to know**" about the content of those allegations is a far cry from a clear and unambiguous request for counsel. ***Davis***, *supra*; *see also **Commonwealth v. Martin***, 101 A.3d 706, 726 (Pa. 2014) (defendant "did not actually request an attorney" by stating he "might be invoking the right to counsel" before continuing conversation immediately). Thus, the police were not required to cease their questioning, and the court properly denied Hayden's suppression motion. ***Frein***, *supra*.
>
> [footnote 21]: Detective Burst also testified at the suppression hearing that Hayden "never said he wanted an attorney," and, if he had done so, the conversation would have ended. N.T. Suppression Hearing, 10/23/17, at 60-61.

(ECF No. 9-30 at 13-16.)

In both his petition and his reply, Petitioner fails to address the substance of the Superior Court's decision, let alone satisfy his burden of establishing that the Superior Court's adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In any event, there is no basis for this Court to disturb the state courts' decision to deny relief on this claim under AEDPA's standard of review. The trial court determined that Petitioner knowingly and intelligently waived his privilege against self-incrimination after conducting a hearing on the matter. The Superior Court subsequently affirmed that decision. There is no reason on the record before this Court to reject the credibility assessments the trial court made after considering the suppression hearing testimony, 28 U.S.C.§ 2254(e)(1), and Petitioner has not met

his burden of demonstrating that the state courts' decision to deny this claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*, § 2254(d)(2).

In addition, the Superior Court properly applied the "totality of the circumstances" test to the events surrounding Petitioner's confessions and interrogation to determine if his decision to waive his *Miranda* rights was uncoerced and made with the requisite level of comprehension. The Superior Court thus applied the correct rule of law to the findings of fact made from the evidence introduced at the suppression hearing and, therefore, Petitioner has not met his burden of demonstrating that the state courts' decision "was contrary to" "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). *Williams*, 529 U.S. at 406 ("a run-of-the mill state-court decision applying the correct legal rule from [Supreme Court] cases [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause."). And, because Petitioner has not established that the state court's decision to deny this claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement[,]" *Harrington*, 562 U.S. at 103, it was not an "unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States[,]" 28 U.S.C. § 2254(d)(1), either. Thus, Petitioner has failed to prove that he is entitled to habeas relief pursuant to 28 U.S.C. § 2254(d).

## III.    Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from … the final order in a habeas corpus proceeding in which the detention complained

of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). It also provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* Applying those standards here, jurists of reason would not find it debatable whether Petitioner's claims should be denied for the reasons given herein. Thus, a certificate of appealability will be denied with respect to his claims.

## IV.    Conclusion

For these reasons the Court will deny the petition and will deny a certificate of appealability.

An appropriate Order follows.

Dated:  May 20, 2024                                         BY THE COURT:


/s/ Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge